IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 8:11CR312** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM** |
| vs. | ) | **AND ORDER** |
| | ) | |
| **TERESA REILLY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court on the Findings and Recommendation (Filing No. 54) issued by Magistrate Judge Thomas D. Thalken recommending that the motion to suppress (Filing No. 42) filed by the Defendant, Teresa Reilly, be denied. Reilly filed a statement of objections to the Findings and Recommendation and a supporting brief (Filing Nos. 55, 56) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a).

Reilly is charged in Count II of a three-count Superseding Indictment with misprision of a felony. Specifically, Count II alleges that Reilly, on or about August 24, 2011, had knowledge of the commission of the felony of conspiring to manufacture and attempting to manufacture 1,000 or more marijuana plants. Three codefendants, including Reilly's boyfriend Jason Brasch, are charged with the underlying marijuana manufacturing conspiracy in Count I. The Defendant, Teresa Reilly, seeks to suppress her statement made to law enforcement as the fruit of her allegedly illegal arrest.

Following an evidentiary hearing, Judge Thalken issued a written Findings and Recommendation. Judge Thalken concluded: Sergeant John Olsen had a reasonable suspicion to stop and briefly detain Reilly; and Sergeant Olsen had probable cause to arrest Reilly at her residence. Judge Thalken therefore recommends that the motion to suppress be denied.

**STANDARD OF REVIEW**

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the findings and recommendation to which the Defendant has objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

**STATEMENT OF FACTS**

Judge Thalken provided an account of the events surrounding Reilly's stop and arrest. The Court has considered the transcript of the hearing conducted by Judge Thalken and carefully viewed the evidence.

On August 24, 2011, at approximately 1:00 p.m. Sergeant Olsen and other officers were briefed on an investigation regarding three residences and a storage facility to be searched along with persons of interest in the case. One of the three residences was the one at issue on Grey Fawn Parkway in Omaha, Nebraska. During the briefing, Reilly was described as a girlfriend of the primary person of interest, Jason Brasch. Officers were also told that Reilly lived at the Grey Fawn Parkway home and drove a silver Kia with Nebraska license plates.

After searching two residences in which large amounts of incriminating evidence were found, officers proceeded to execute a search warrant at the Grey Fawn Parkway residence. After the initial clearance of the residence, Sergeant Olsen was in uniform and parked in his marked Nebraska State Patrol cruiser in the driveway of the home with the front of his car facing the street. Sergeant Olsen was instructed to watch for anyone approaching the residence and, in particular for Reilly, as she was the only one of four suspects not in custody.

After approximately forty-five minutes after the search team had entered the home, Sergeant Olsen saw a silver Kia approach, driven by a woman who appeared similar to the photograph of Reilly shown during the briefing. The woman looked in Sergeant Olsen's direction and then continued driving past the residence westbound on Grey Fawn Parkway. Sergeant Olsen pulled out and stopped the Kia approximately three-fourths of a block away. The Kia stopped without incident.

Sergeant Olsen approached the driver who identified herself as "Justine Reilly." Although Reilly's driver's license listed her name as "Teresa J. Reilly," Reilly stated that she uses her middle name. Her license reported the Grey Fawn Parkway address as her residence. When Sergeant Olsen asked Reilly why she did not stop at the residence she answered that she did not know what was going on. At Sergeant Olsen's request, Reilly accompanied Sergeant Olsen to his cruiser. Sergeant Olsen was directed to take Reilly to the residence to meet with an investigator. Sergeant Olsen then drove Reilly to the residence.

When Sergeant Olsen and Reilly arrived, Investigator Jason Scott met them and arrested Reilly for manufacturing and distributing marijuana. Sergeant Olsen handcuffed her and transported her to the state patrol office where she gave a statement. At the time of Reilly's arrest, Investigator Scott was aware of the following facts set out in the affidavit and application for the search warrant for the Grey Fawn Parkway residence:

> . . . On June 30, 2011, your Affiant became aware of an individual identified as Jason R. Brasch, DOB . . . . Your Affiant was informed that Brasch was involved in the growing and distribution of marijuana in the Omaha, Douglas County area. Your Affiant conducted a records check of Brasch and located a past arrest history for manufacturing marijuana in 2008. A records check also showed no Nebraska wage earnings as of July 31, 2006. Your affiant began surveillance of Brasch beginning with his residence located at . . . Grey Fawn Parkway, Omaha, Douglas County, Nebraska and Brasch's vehicle, blue 2006 Dodge Pickup bearing (NB)RTD074. A check of

3

> utilities listed Jason Brasch, DOB . . . as the individual responsible for the residence.
>
> Your Affiant used CI #214-4122 to conduct two controlled purchases of one quarter of a pound of marijuana from BRASCH at each purchase. Each purchase came directly from Brasch and occurred at Brasch's residence, . . . Grey Fawn Parkway, Omaha, Douglas County, Nebraska. CI purchase one occurred on July 25, 2011. CI purchase number two occurred on August 3, 2011.

(Filing No. 49, Ex. 2.)

Judge Thalken's Findings and Recommendation included the following additional facts:

> . . . . The Grey Fawn Parkway residence was one of four locations, three residences and a storage locker, being searched pursuant to a search warrant. While inside the Grey Fawn Parkway residence and prior to Reilly's arrest, Investigator Scott observed in plain sight numerous items that were consistent with the manufacture and distribution of marijuana including pre-harvested marijuana packaged for sale. Also observed in plain sight were ballasts, growing lights, power inverters, fertilizers, timers, currency counters, bongs, and currency. Prior to the execution of the Grey Fawn Parkway search warrant, Investigator Scott participated in the search of . . . Douglas Street in western Douglas County where Reilly's co-defendants, Brasch, Burbach, and Wilkinson were found sitting on buckets trimming marijuana plants for packaging. Approximately 1100 marijuana plants along with grow lamps, fertilizers, power inverters, and other paraphernalia were seized at that location. At another search warrant location, . . . Dutch Hall Road in Washington County, 400-500 marijuana plants were seized along with ballasts, grow lights, fertilizers, timers, pots, and other grow operation paraphernalia. Neither the western Douglas County nor Washington County locations had indicia of any person living there except for the marijuana grow operations. Prior to the search of the Grey Fawn Parkway residence, Investigator Scott participated in several controlled purchases of marijuana from Brasch at the Grey Fawn Parkway residence where Reilly was present for the transactions. Reilly was Brasch's girlfriend, she lived at the Grey Fawn Parkway residence, and had her driver's license issued to her for that address. During the search of the Grey Fawn Parkway residence, one of the bedrooms contained women's clothing and drug use paraphernalia. Investigator Scott testified he could smell the odor of raw and smoked marijuana upon entry into the Grey Fawn Parkway residence.

(Tr. 54, at 3-4 (citations omitted).)

4

## ANALYSIS

Reilly objects to Judge Thalken's following factual finding: "Prior to the search of the Grey Fawn Parkway residence, Investigator Scott participated in several controlled purchases of marijuana from Brasch where Reilly was present for the transactions." (Filing No. 54, at 3; Filing No. 55, at 1.)

She objects to Judge Thalken's failure to find that no witness testified that Reilly "had been present inside the Grey Fawn residence in the three weeks preceding the execution of the search warrant." (Filing No. 55, at 2.)

Reilly objects to Judge Thalken's conclusion of law that probable cause supported her arrest.

Reilly objects to Judge Thalken's "implicit conclusion that the illegal arrest did not taint the subsequently given statements." (*Id.*)

Finally, Reilly includes a statement that "[t]o the extent that any statement, fact, or conclusion of law contained within [her] simultaneously-filed brief contradicts the magistrate judge's Findings and Recommendation, that statement, fact, or conclusion is incorporated herein as a stated objection to the magistrate judge's Findings and Recommendation." (*Id.*)

I. **Factual Findings**

A. **Controlled Purchases**

Reilly objects to Judge Thalken's finding that "[p]rior to the search of the Grey Fawn Parkway residence, Investigator Scott participated in several controlled purchases of marijuana from Brasch where Reilly was present for the transactions." (Filing No. 54, at 3.)

Reilly argues that in reaching this finding, Judge Thalken failed to consider other testimony, including Investigator Scott's testimony on cross examination. On cross examination, Investigator Scott testified that he participated, outside the residence, in the two controlled buys described in the search warrant affidavit. Officers sent a confidential informant ("CI") into the residence on both occasions. Investigator Scott learned that Reilly was present in the residence during the buys from another investigator, Investigator Eberle, who debriefed the CI and was "confident that she was staying there." (Tr. 53, at 51:25-52:2; 53:12-15.) Investigator Scott did not know whether the buys were recorded. Investigator Scott was unable to place Reilly at the Grey Fawn Parkway residence at any time other than the two controlled buys based on his personal knowledge. Investigator Scott testified that the officers were unsure of Reilly's involvement and that was a part of their investigation on August 24, 2011.

Reilly argues that the extent of her presence during the controlled buys is not clear. She suggests the possibility that, assuming she was present, she was in a large home and possibly in another room during both controlled buys and was unaware of those events. Her argument is unavailing. The only evidence before the Court shows that Reilly was present, in some capacity, in the residence during the controlled buys. Her presence was noted by the CI. Investigator Eberle, who investigated her residence, was also convinced that she lived in the Grey Fawn Parkway home. His investigation is corroborated by Reilly's driver's license that reflects that location as her residence. In short, the evidence shows that Reilly was present in some capacity inside the residence during the controlled buys. Reilly failed to present any contrary evidence. The objection is overruled.

**B.     Alleged Lack of Factual Finding**

Reilly argues that Judge Thalken failed to find that "no witness testified that [she] had been present inside the Grey Fawn residence in the three weeks preceding the execution of the search warrant." (Filing No. 55, at 2.)

The Court is unaware of any legal support for an alleged "failure to find" a fact by a magistrate judge, and Reilly has presented none. Moreover, Reilly's desired "missing" factual finding is not supported by the evidence that shows she resided at the address in question. Reilly presented no evidence indicating that she was not present at the address during the crucial time period. The objection is overruled.

**II.    Conclusions of Law**

**A.     Probable Cause for Arrest**

As Judge Thalken stated, at the time of Reilly's arrest, Investigator Scott knew:

> The residence was linked to a significant marijuana grow operation at other locations but involving residents of the Grey Fawn Parkway residence. The officers found marijuana and drug paraphernalia in nearly all areas of the Grey Fawn Parkway residence. The smell of burnt and raw marijuana permeated the house. The officers reasonably believed Reilly lived at the house based on information conveyed during the pre-search briefing, Reilly's driver's license, and the existence of women's clothing found in one of the bedrooms. The officers observed drug paraphernalia in plain view in the same bedroom. Reilly had been present for several marijuana sales at the Grey Fawn Parkway residence.

(Filing No. 54, at 8.)

Reilly argues: she was not linked to the other residences in which incriminating evidence was found and had never been to those residences; no member of law enforcement witnessed or heard the two controlled buys; Investigator Scott had no personal knowledge that Reilly was present, passively or actively, during the buys; much

of the evidence found at the Grey Fawn Parkway residence was in an office in which no venue to Reilly was found; larger amounts of marijuana were in a cooler rather than in plain sight; only a pipe was found in the bedroom that contained women's clothing; and no witness testified the incriminating evidence was in the home when Reilly was last placed in the home on August 3, 2011, or between that date and the date of the search.

Reilly relies heavily on *United States v. Reinholz,* 245 F.3d 765 (8th Cir. 2001), in which the Eighth Circuit Court of Appeals concluded that Reinholz's arrest was not supported by probable cause and also could not be justified under *Michigan v. Summers,* 452 U.S. 692 (1981).[1] In *Reinholz*, a pharmacist notified law enforcement that Reinholz was again purchasing iodine crystals, which could be used to manufacture methamphetamine. Officers investigated, finding that Reinholz had no criminal record but his girlfriend had a record of drug convictions. *Reinholz,* 245 F.3d at 770. A trash pull at the couple's home resulted in the seizure of syringes and a brass pipe with residue and venue to both individuals. *Id.* at 770-71. A search warrant was issued for Reinholz's person and the residence. Officers approached Reinholz as he left his workplace, patted him down, handcuffed him and drove him home in the police car to execute the search warrant at his residence, during which officers found incriminating evidence. Reinholz gave an incriminating statement and consented to the search of his car. *Id.* at 771. Reinholz and his girlfriend were charged with various drug crimes. The Eighth Circuit Court of

---

[1]In *Summers*, the Court held that officers executing a search warrant to search a residence legally detained a resident of the house as he was walking down the front steps. The Court reasoned that factors justifying the detention included the prevention of flight, officer safety, and completing an orderly search with the resident present. *Id.* at 702-03. In Reinholz's case, he was arrested at his workplace, which was a twenty-five minute drive from his home. *Reinholz,* 245 F.3d at 771.

8

Appeals affirmed the Honorable Joseph F. Bataillon's decision granting Reinholz's motion to suppress his post-arrest statements as fruits of his illegal arrest.  The Eighth Circuit reasoned that officers lacked personal knowledge or reliable information indicating that Reinholz committed any crime, he had no drug record, he had not been observed engaging in illegal activity, no corroborating police investigation had been conducted, and surveillance revealed no criminal activity associated with visitors to Reinholz's residence. Officers only knew that Reinholz had legally purchased iodine crystals and drug paraphernalia had been found in a trash pull at his residence.  *Id.* at 778.

Reilly's case is distinguishable from *Reinholz*.  Numerous pieces of evidence of drug activity were in plain view in the residence.  This evidence had been seen by officers upon performing the initial sweep of the home.  A piece of drug paraphernalia was found in a bedroom of the home containing women's clothing.  The house smelled of raw and burnt marijuana.  A CI had completed two controlled buys in the residence, and according to the CI Reilly was in the residence during the purchases.   Reilly was known to be the girlfriend of the primary target of the investigation.  She listed the Grey Fawn Parkway address on her driver's license as her residence.  In summary, the amount of incriminating evidence in Reilly's case exceeds the evidence known to officers in Reinholz's case.  Reilly has not presented any evidence to support her desired version of the facts.  The evidence is sufficient to establish probable cause to arrest Reilly, and the objection is overruled.

**B.**	**Fruit of Allegedly Illegal Arrest**

Because Reilly's arrest was supported by probable cause, her statement cannot be suppressed as a fruit of an illegal arrest.  The objection is overruled.

**C.     Omnibus Objection**

NECrimR 59.2(a) states that, in objecting to a magistrate judge's findings and recommendation, "[t]he party must specify (1) the parts of the . . . findings and recommendation to which the party objects." Therefore, Reilly's general statement that "[t]o the extent that any statement, fact, or conclusion of law contained within [her] simultaneously-filed brief contradicts the magistrate judge's Findings and Recommendation, that statement, fact, or conclusion is incorporated herein as a stated objection to the magistrate judge's Findings and Recommendation" is an imprecise and improper objection. Any such "objections" are overruled for lack of specificity and compliance with NECrimR 59.2(a).

Accordingly,

IT IS ORDERED:

1. The Magistrate Judge's Findings and Recommendation (Filing No. 54) is adopted in its entirety;

2. The Defendant's objections to the Findings and Recommendation (Filing No. 55) are overruled; and

3. The Defendant's motion to suppress (Filing No. 42 ) is denied.

DATED this 29th day of March, 2012.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge